VERNON F. HOWELL v. DONALD RAY WATERS

No. 862SC66

(Filed 19 August 1986)

1. **Rules of Civil Procedure § 15.2— action for rescission on mutual mistake—evidence showed fraud—no implied consent to try fraud**

   In an action arising from representations of defendant's agent in the sale of real estate, plaintiff's contention that the court erred by granting a directed verdict for defendant must be considered on the pleaded grounds of mutual mistake, even though the jury could have found fraud from the evidence, where the evidence which supported a claim for fraud was also relevant to the issue of mutual mistake and its admission therefore did not constitute implied consent to try the issue of fraud. N.C.G.S. § 1A-1, Rule 15(b).

2. **Cancellation and Rescission of Instruments § 4— real estate—mistake as to boundary—directed verdict for defendant improper**

> The trial court erred by allowing defendant's motion for a directed verdict in an action for rescission based on mutual mistake arising from defendant's agent's erroneous description of the boundaries of a tract of real property where the evidence, viewed in the light most favorable to plaintiff, would support a finding that at the time the contract was entered plaintiff was mistaken as to the boundaries and defendant's agent either had reason to know of plaintiff's mistake or caused the mistake, a jury could find that plaintiff's mistake as to the boundaries was a material mistake, and the contract did not allocate to plaintiff the risk of a mistake regarding the boundaries.

APPEAL by plaintiff from *Griffin, Judge.* Judgment entered 10 July 1985 in Superior Court, BEAUFORT County. Heard in the Court of Appeals 15 May 1986.

On 27 July 1983 Jane Cole Leatherbee filed a civil action against plaintiff alleging that plaintiff wrongfully cut and removed timber from her land in Beaufort County, North Carolina. Plaintiff denied the allegations of Leatherbee's complaint and asserted ownership of the property. In addition plaintiff impleaded defendant. In his third party complaint plaintiff alleged that on 4 January 1979 defendant conveyed to him a certain tract of land in Beaufort County. Plaintiff further alleged that prior to the conveyance defendant's agent represented that the tract included the property to which Leatherbee asserts title and that plaintiff relied on the representations of defendant's agent in purchasing the tract from defendant and in removing the timber. Plaintiff sought indemnification for the wrongful removal of the timber and an abatement of the purchase price should it be determined that Leatherbee owns the disputed property. By an order entered 19 February 1985, Leatherbee was adjudged the owner of the land described in her complaint.

On 26 March 1984 plaintiff brought this action seeking to rescind the contract he entered with defendant. Plaintiff's complaint raised mutual mistake as the ground for rescission. The complaint reiterated the allegations of plaintiff's third party complaint and alleged further misrepresentations by defendant's agent as to the true boundary lines.

The two actions were consolidated for trial. At the close of the evidence presented by Leatherbee and plaintiff, Leatherbee and defendant moved for a directed verdict. The court allowed

their motions and directed a verdict for Leatherbee in her action against plaintiff for wrongful removal of the timber and for defendant in plaintiff's action for rescission or, in the alternative, abatement of the purchase price based upon plaintiff's and defendant's mutual mistake as to the boundaries of the land purchased by plaintiff.

From a judgment dismissing plaintiff's claims against defendant, plaintiff appeals.

*Pritchett, Cooke & Burch, by Stephen R. Burch and W. W. Pritchett, for plaintiff appellant.*

*John A. Wilkinson for defendant appellee.*

WHICHARD, Judge.

Plaintiff contends the court erred by granting defendant's motion for a directed verdict "in view of plaintiff's evidence that Defendant's agent misrepresented the boundary lines of the tract of land which plaintiff purchased." In ruling on a motion for a directed verdict the court must view the evidence in the light most favorable to the nonmoving party. *Husketh v. Convenient Systems*, 295 N.C. 459, 461, 245 S.E. 2d 507, 508-09 (1978). The motion should be granted only if the evidence is insufficient, as a matter of law, to support a verdict for the nonmoving party. *Id.*

The evidence, viewed in the light most favorable to plaintiff, can be summarized as follows:

On 4 January 1979 plaintiff purchased a tract of land from defendant. Plaintiff negotiated the terms of the purchase with Herbert Hoell, defendant's agent.

In September 1978 Hoell and plaintiff viewed the property. Hoell described the boundaries of the property to plaintiff as follows: the southern boundary of the property is canal No. 10; the eastern boundary is the Broadcreek Outfall canal; the northern boundary is canal No. 9; and the western boundary abuts Mr. Myers' property. Plaintiff assumed that Hoell's description of the boundaries was complete and accurate and relied on his description in having the timber appraised prior to purchasing the property.

While portions of the southern, eastern and northern boundaries of the property conveyed are canal No. 10, the Broadcreek Outfall canal, and canal No. 9, respectively, a portion of the southern boundary lies north of canal No. 10, a portion of the eastern boundary lies west of the Broadcreek Outfall canal, and a portion of the northern boundary lies south of canal No. 9. The boundaries of the property conveyed deviate from Hoell's incomplete representation of the boundaries so as to exclude at least 125 acres. The contract pursuant to which the property was conveyed described the property as follows: "that plot, piece or parcel of land . . . in the county of Beaufort, State of N.C., being known as and more particularly described as . . . 484 AC. in Pantego Twnsp. owned by [defendant]."

Hoell testified for plaintiff and admitted that he had represented to plaintiff "in a very general manner" that the southern boundary of the property was canal No. 10, the eastern boundary was the Broadcreek Outfall canal and the northern boundary was canal No. 9. Prior to making these representations, Hoell had been given a freehand sketch of the property by defendant. The sketch correctly depicted the boundaries of the property conveyed. Hoell testified that he "did not tell [plaintiff] that [he] knew where all of the boundaries of the tract were, and [he] did not know where they were."

[1]   Plaintiff has denominated his claim as one based on "mutual mistake." However, the evidence would support an action for rescission of the contract based on fraud. The essential elements of fraud are as follows:

> "(1) That defendant made a representation relating to some material past or existing fact; (2) that the representation was false; (3) that when he made it, defendant knew that the representation was false, *or made it recklessly, without any knowledge of its truth and as a positive assertion*; (4) that defendant made the representation with intention that it should be acted upon by plaintiff; (5) that plaintiff reasonably relied upon the representation and acted upon it; and (6) that plaintiff thereby suffered injury." [Emphasis supplied.]

*Lamm v. Crumpler*, 240 N.C. 35, 44, 81 S.E. 2d 138, 145 (1954), *quoting Cofield v. Griffin*, 238 N.C. 377, 379, 78 S.E. 2d 131, 133 (1953); *see also Hinson v. Hinson*, 80 N.C. App. 561, 574-75, 343

S.E. 2d 266, 274 (1986). Hoell's representation regarding the boundaries of the property related to a material existing fact, and while portions of the boundaries were as Hoell represented, a jury could find that his incomplete description amounted to a false representation. Prior to showing the property to plaintiff, Hoell had been given a sketch which accurately depicted the boundary lines. Hoell testified regarding his knowledge of the boundaries at that time: "I did not tell [plaintiff] that I knew where all the boundaries of the tract were, and I did not know where they were. I would have furnished more detailed information if [plaintiff] had asked for it." Based on the foregoing a jury could find that Hoell's description of the boundaries was made recklessly, without regard to the truth or falsity of the representation. Further, given the relative positions of plaintiff and Hoell—a potential purchaser viewing the property and an agent of the owner giving a tour of the property—a jury could find that Hoell's description of the boundaries was made as a positive assertion with the intent that it should be acted upon by plaintiff, and that plaintiff reasonably relied upon the representation. As Hoell's principal, defendant is liable for Hoell's representations to the same extent as if he had made them himself. *MacKay v. McIntosh*, 270 N.C. 69, 72-73, 153 S.E. 2d 800, 803 (1967).

Plaintiff, however, did not plead fraud. In his answer defendant stated: "In the instant action, [plaintiff] abandons the theory of a misrepresentation and bases his claim upon the allegation of *Mutual Mistake* . . . ." The record does not reveal an attempt by plaintiff to assert fraud as a ground for rescission of the contract subsequent to the pleading stage, and although the majority of the cases cited in plaintiff's brief are fraud cases, plaintiff's attorney expressly stated in oral argument that plaintiff was not attempting to assert a claim based on fraud.

"In passing upon a trial judge's ruling as to a directed verdict, we cannot review the case as the parties might have tried it; rather, we must review the case as tried below, as reflected in the record on appeal." *Tallent v. Blake*, 57 N.C. App. 249, 252, 291 S.E. 2d 336, 339 (1982). We are mindful that N.C. Gen. Stat. 1A-1, Rule 15(b) provides: "When issues not raised by the pleadings are tried by the express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." The evidence which supports a claim for fraud was

also relevant to the issue of mutual mistake raised in plaintiff's complaint and, as such, its admission does not constitute "implied consent" to try the issue of fraud. *Gilbert v. Thomas*, 64 N.C. App. 582, 585, 307 S.E. 2d 853, 855-56 (1983) ("When, however, the evidence used to support the new issue would also be relevant to support the issue raised by the pleadings, the defendant has not been put on notice of plaintiff's new or alternate theory. Therefore, defendant's failure to object does not constitute 'implied consent.'"); *see also Munchak Corp. v. Caldwell*, 37 N.C. App. 240, 246 S.E. 2d 13 (1978). Accordingly, if plaintiff is to prevail on his contention that the court erred in granting defendant's motion for a directed verdict, he must do so on the pleaded ground of mutual mistake.

[2] Under certain circumstances a contract for the sale of real estate may be rescinded on the basis of mutual mistake of fact. *See, e.g., MacKay v. McIntosh*, 270 N.C. 69, 153 S.E. 2d 800 (1967). In *MacKay* the Court rescinded an executory real estate contract when the parties, at the time of execution, shared the mistaken belief that "the subject property was within the boundaries of an area zoned for business." *MacKay*, 270 N.C. at 73-74, 153 S.E. 2d at 804. The Court reasoned:

"The formation of a binding contract may be affected by a mistake. Thus, a contract may be avoided on the ground of mutual mistake of fact where the mistake is common to both parties and by reason of it each has done what neither intended. Furthermore, a defense may be asserted when there is a mutual mistake of the parties as to the subject matter, the price, or the terms, going to show the want of a consensus *ad idem*. Generally speaking, however, in order to affect the binding force of a contract, the mistake must be of an existing or past fact which is material; it must be as to a fact which enters into and forms the basis of the contract, or in other words it must be of the essence of the agreement, the *sine qua non*, or, as is sometimes said, the efficient cause of the agreement, and must be such that it animates and controls the conduct of the parties." 17 Am. Jur. 2d, Contracts Sec. 143.

In our opinion, and we so hold, whether the subject property was within the boundaries of an area zoned for business

is a factual matter; and, under the evidence, the mutual mistake as to this fact related to the essence of the agreement.

*Id.* at 73-74, 153 S.E. 2d at 804.

In *Financial Services v. Capitol Funds*, 288 N.C. 122, 217 S.E. 2d 551 (1975), the Court qualified the requirement that a mistake be mutual as follows:

> In order for the remedy of rescission to be operable because of mistake of fact, there must be mutual mistake of fact. A unilateral mistake, unaccompanied by fraud, imposition, undue influence, or like oppressive circumstances, is not sufficient to avoid a contract or conveyance. *Tarlton v. Keith*, 250 N.C. 298, 108 S.E. 2d 621; *Cheek v. R.R.*, 214 N.C. 152, 198 S.E. 626. The following pertinent statement aptly summarizes the requirement of mutuality:
>
> > . . . It is said that ordinarily a mistake, in order to furnish ground for equitable relief, must be mutual; and as a general rule relief will be denied where the party against whom it is sought *was ignorant that the other party was acting under a mistake and the former's conduct in no way contributed thereto*, and a fortiori this is true where the mistake is due to the negligence of the complainant. . . . [Emphasis supplied.]
>
> 77 Am. Jur. 2d *Vendor and Purchaser* Sec. 51 at 237.

*Financial Services*, 288 N.C. at 136, 217 S.E. 2d at 560; *see also Blankenship v. Price*, 27 N.C. App. 20, 22, 217 S.E. 2d 709, 710 (1975) ("In general, a unilateral mistake in the making of an agreement, of which the other party is ignorant and to which he in no way contributes, will not afford grounds for avoidance of the agreement.").

Thus, while it has been stated that there can be no relief from a unilateral mistake, *see, e.g., Tarlton v. Keither*, 250 N.C. 298, 305, 108 S.E. 2d 621, 625, the requirement that the mistake be mutual is not without exceptions. *See Financial Services, supra; Blankenship, supra. See also Restatement (Second) of Contracts* Sec. 153 (1979); D. Dobbs, *Remedies* Sec. 11.4 (1973). The mistake of one party is sufficient to avoid a contract when the

other party had reason to know of the mistake or caused the mistake. *Restatement (Second) of Contracts* Sec. 153 (1979).

The evidence, viewed in the light most favorable to plaintiff, would support a finding that at the time the contract was entered plaintiff was mistaken as to the boundaries and Hoell, defendant's agent, either had reason to know of plaintiff's mistake or caused the mistake. Further, the boundaries of the property conveyed deviated from those described by Hoell so as to exclude at least 125 acres from the tract plaintiff intended to purchase. A jury thus could find that plaintiff's mistake as to the boundaries was a material mistake — one "which enters into and forms the basis of the contract . . . or, as is sometimes said, the efficient cause of the agreement . . . such that it animates and controls the conduct of the parties." *MacKay, supra.*

Defendant maintains that because the deed accurately described the property which he intended to convey, plaintiff should be denied relief. Defendant's contention presents two principles of law which constitute defenses to plaintiff's action: (1) the statute of limitations in actions based on mistake is three years, N.C. Gen. Stat. 1-52(9), and the limitation period "begins to run from the time the mistake is discovered or *should have been discovered," Huss v. Huss*, 31 N.C. App. 463, 467, 230 S.E. 2d 159, 163 (1976); and (2) the party who assumes the risk of mistake regarding certain facts may not seek to rescind a contract merely because the facts were not as he had hoped. *Financial Services*, 288 N.C. at 139, 217 S.E. 2d at 562; *Restatement (Second) Contracts* Secs. 153-54 (1979); D. Dobbs, *Remedies* Sec. 11.2 at 719, Sec. 11.3 at 735.

A party has assumed the risk of a mistake when

(a) the risk is allocated to him by agreement of the parties, or

(b) he is aware, at the time the contract is made that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or

(c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so.

*Restatement (Second) Contracts* Sec. 154 (1979).

The contract here did not allocate to plaintiff the risk of a mistake regarding the boundaries. *See Restatement (Second) Contracts* Sec. 154(a) (1979). Considering the nature and location of the land and the extreme generality of the description in the contract, together with the fact that the vendor's agent made positive assertions regarding the boundaries, it was not reasonable for the court to allocate the risk of mistake as to the boundaries to the purchaser as a matter of law. *See Restatement (Second) Contracts* Sec. 154(c) (1979); *Fox v. Southern Appliances*, 264 N.C. 267, 271-72, 141 S.E. 2d 522, 526 (1965) (reference to *Whitaker v. Wood*, 258 N.C. 524, 128 S.E. 2d 753, as "a case involving misrepresentations as to matters of record in the sale of land . . . in which it was held that the question whether plaintiffs might reasonably rely on seller's representations was for the jury"); *Keither v. Wilder*, 241 N.C. 672, 675-76, 86 S.E. 2d 444, 446-47 (1955); *NCNB v. Carter*, 71 N.C. App. 118, 123, 322 S.E. 2d 180, 184 (1984) ("Generally, the buyer . . . has the right to rely on the boundary representations made by the seller when the seller purports to know them."). *But cf. Breece v. Standard Oil Co.*, 209 N.C. 527, 184 S.E. 86 (1936); *Dorrity v. Bldg. & Loan Ass'n*, 204 N.C. 698, 169 S.E. 640 (1933). Whether plaintiff assumed the risk of a mistake by entering into the contract aware that his knowledge regarding the boundaries was limited is in essence a question of whether plaintiff reasonably interpreted Hoell's representation as a complete description of the boundaries. *See Restatement (Second) Contracts* Sec. 154(c); D. Dobbs, *Remedies* Sec. 11.2 at 719 ("One who knows he is uncertain assumes the risk that the facts will turn out unfavorably to his interests."). Whether plaintiff failed to exercise due diligence in discovering his mistake, N.C. Gen. Stat. 1-52(9), or whether he assumed the risk of a mistake regarding the boundaries of the property, *Financial Services, supra,* are questions of fact to be determined by a jury. *Whitaker v. Wood*, 258 N.C. 524, 128 S.E. 2d 753 (1963); *NCNB*, 71 N.C. App. at 123-24, 322 S.E. 2d at 184; *Huss*, 31 N.C. App. at 468, 230 S.E. 2d at 163.

While based on plaintiff's evidence a jury could find a mistake justifying rescission, recent Supreme Court decisions have raised questions regarding application of the doctrine of mutual mistake to executed real estate contracts. In *Hinson v. Jefferson*, 287 N.C. 422, 215 S.E. 2d 102 (1975), our Supreme Court

expressly refused to apply the mutual mistake of fact theory to an executed, as opposed to executory, real estate sale contract. *Hinson*, 287 N.C. at 432-33, 215 S.E. 2d at 109-10. The parties there mistakenly assumed the subject property could support an on-site sewage disposal system and thus be suitable for a residence. *Id.* Assuming, *arguendo*, that the facts gave rise to a "true mistake case," the court concluded that it "must necessarily involve a mistaken *assumption* of the parties in the formation of the contract of purchase." *Hinson*, 287 N.C. at 430, 215 S.E. 2d at 107. The Court went on to define a mistaken assumption case as one in which "the parties communicate their desires to each other perfectly; the intent to complete a sale, or a contract of sale, and their objective acts are in accord with their intent." *Id.* After noting the unsettled nature of the law of mistake as applied to mistaken assumption cases, the court rejected the theory of mutual mistake as a basis for plaintiff's rescission. It explained:

> [B]ecause of the uncertainty surrounding the law of mistake we are extremely hesitant to apply this theory to a case involving the completed sale and transfer of real property. *Its application to this type of factual situation* might well create an unwarranted instability with respect to North Carolina real estate transactions and lead to the filing of many non-meritorious actions. Hence, we expressly reject this theory as a basis for plaintiff's rescission. [Emphasis supplied.]

*Id.* at 432-33, 215 S.E. 2d at 109.

In *Financial Services v. Capitol Funds*, 288 N.C. 122, 217 S.E. 2d 551 (1975), which closely followed *Hinson*, the Court held that an executed real estate contract was not subject to rescission for mutual mistake of fact where the purchaser mistakenly assumed that an effective driveway permit for the subject property had been obtained by the assignor of an option to purchase the property. However, the Court stated:

> Although this Court will readily grant equitable relief in the nature of reformation or rescission on grounds of mutual mistake when the circumstances justify such relief, we jealously guard the stability of real estate transactions and require clear and convincing proof to support the granting of this equitable relief in cases involving *executed* conveyances of land. [Emphasis supplied.]

*Id.* at 139, 217 S.E. 2d at 562. Thus, without detailing the circumstances under which a mutual mistake will justify rescission of an executed real estate contract, the Court acknowledged that certain circumstances will warrant equitable relief from an executed contract for the sale of realty on the ground of mutual mistake.

The mistakes from which plaintiffs sought relief in *Hinson* and *Financial Services* were mistaken assumptions; neither mistake was the result of a misrepresentation, as here. *Hinson*, 287 N.C. at 430, 215 S.E. 2d at 107 ("Assuming, *arguendo*, . . . that this is a true mistake case, then it is one that must necessarily involve a mistaken *assumption* of the parties in the formation of the contract of purchase. In these mistaken assumption cases, unlike other kinds of mistake cases, the parties communicate their desires to each other perfectly . . . ."); *Financial Services*, 288 N.C. at 137, 217 S.E. 2d at 551 ("[W]e assume, without deciding, that plaintiff has established the purchase of the subject property under a mistaken assumption that an effective driveway permit had been obtained . . . and that plaintiff would not have purchased the property without such permit. Even so, there is a complete absence of evidence tending to show that this mistaken assumption was induced by any misrepresentation, deceitful action, or misleading silence on the part of [defendant]."). We find this distinction dispositive. The Court implied in *Financial Services*, 288 N.C. at 139, 217 S.E. 2d at 562, that certain mistakes will justify the rescission of an executed real estate contract; a mistake induced by a misrepresentation is as persuasive a case for rescission as any. *See Hice v. HiMil, Inc.*, 301 N.C. 647, 273 S.E. 2d 268 (1980) (allowing reformation of a deed executed seven years prior to plaintiff's action); D. Dobbs, *Remedies* Sec. 11.3 at 733 ("Probably courts are more willing to grant rescission for mistake induced by innocent misstatement than for mistake in unspoken assumptions not so induced.").

We thus conclude that the court erred in allowing defendant's motion for a directed verdict. The following questions of fact should have been answered by the jury:

(1) Did plaintiff exercise due diligence in discovering the alleged mistake such that his action is not barred by the three year statute of limitations in N.C. Gen. Stat. 1-52(9)?;

(2) Has plaintiff presented clear, cogent and convincing evidence establishing that he was mistaken regarding the boundaries of the property to be conveyed?;

(3) If plaintiff was mistaken, did defendant or defendant's agent have reason to know of plaintiff's mistake or cause plaintiff's mistake?;

(4) Was the mistake material?; and

(5) Did plaintiff assume the risk of a mistake by:

   (a) unreasonably relying on Hoell's representations or

   (b) treating his limited knowledge of the boundaries of the property to be conveyed as sufficient?

Should the jury answer the first four questions affirmatively and the fifth negatively, plaintiff is entitled to rescission of the contract.

Reversed and remanded.

Judges WEBB and JOHNSON concur.